This kind of proof is not conclusive, but is *prima facie* evidence, and may be counteracted and repelled by other testimony; and as the credit of it must be determined by the jury, I cannot see any inconveniencies attending the admission of it, equal to those which will result from its rejection. I think it is the safest way to allow it to go to the jury; and therefore am of opinion that the judgment of the court below ought to be reversed.

JUDGMENT AFFIRMED.

1810.
Prutzman
vs
Pitesell

---

### Prutzman, et al. vs. Pitesell.

June.

APPEAL from a decree of the Court of Chancery. The petition of the appellee against the appellants, filed on the 12th of June 1804, stated, that on the 8th of October 1796, the appellants filed a bill against him, he being then an infant, for the conveyance of part of a tract of land called *Paraphrase* and *The Resurvey on John's Delight*, containing 166 acres, lying in *Frederick* county. That a commission issued to appoint a guardian, and take his answer, on the 19th of November 1796. That *Henry Kuhn* was appointed his guardian, who answered and admitted all the facts contained in the bill. That no evidence was taken to establish the truth of the allegations contained in the bill, and that they cannot be established; and that the decree was unduly and improperly obtained. That the petitioner came of age the 13th of May 1804. Prayer for a revision and reconsideration of the decree, and for general relief. The defendants, (now appellants,) by their answer, admitted the filing of their bill, the appointment of a guardian, and the answer and decree, but averred that the facts stated in the bill were true and could be established, and that the decree was fairly and properly obtained, and they pleaded the decree and proceedings in bar of the relief prayed by the petition.

The proceedings on the bill referred to, with the decree for a conveyance, &c. passed the 2d of March 1797, were exhibited, and testimony was taken under commissions issued for that purpose.

KILTY, Chancellor, (February 1807.) This case, which was argued at the present term by the counsel for the com-

Where a bill had been filed in chancery against an infant for a specific performance of a parol agreement entered into by the ancestor, to convey land to his daughter, and on the answer of his guardian, and his agreement, a conveyance was decreed. On the arrival at age of the infant, he petitioned under the act of *November* 1773, *ch.* 7, for a reconveyance.— *Held*, that in order to show cause why a revision and reconsideration of the decree should take place, the party, who was an infant, may examine the proofs for the decree, and resort to any error on its face, tending to show that the conveyance ought not to have been directed; and also that such decree and the proceedings therein, could not be pleaded in bar of the relief prayed. The petitioner is not confined to the former proceedings only, but may by further proceedings show himself entitled to relief.

An infant is not bound by the answer of his guardian if he shows his dissent to it within the proper time.

Where in such a case, the court of chancery decreed a reconveyance of land, which, by a former decree that court had directed to be conveyed.

plainant and the defendants, arises under the act of November 1773, ch. 7, for the amendment of the law, being a petition for the reconveyance of land, which it appears was on the second of March 1797, decreed to be conveyed in a suit in which the present defendants were complainants, and the petitioner, then an infant, the defendant. The petition is not in form exactly according to the act, or to the proviso in the decree, and the decree itself is only incidentally mentioned, and is not made a part of the petition. But this defect is supplied by the answer in which the decree is referred to, and the petition may be considered as an application, to be permitted to show cause why the said conveyance ought not to have been ordered or directed. The chancellor is not apprised of any decision, or former suit, under this act, and he must therefore be left to form his own opinion as to the construction of it, on which the counsel very widely differ. His opinion is, that in order to show cause, the party who was an infant may, under this act, examine the proofs for the said decree, and resort to any error on the face of the decree, tending to show that the conveyance therein decreed ought not to have been ordered or directed, and therefore that the decree and proceedings therein cannot be pleaded in bar of the present relief prayed, as is contended by the plea put in with the answer of the defendants. Such a plea would entirely frustrate the intent and object of the act, and would be, as is expressed in the case of *Fountain vs. Caine and Jeffs,* *(1 P. Wms. 504),* at the same time that the court gave him liberty to show cause, to tie up his hands from showing cause. In a case where such a plea was allowed, *(Gregory vs Molesworth, 3 Atkyns, 626,)* the bill had been brought by an infant, by his *prochein amy,* and of course the complainant could not have the benefit of a proviso similar to the one in the present decree; and in *Napier vs. Effingham,* (2 P. Wms. 401,) an infant complainant was allowed to show cause after he came of age.

The chancellor considers also, that the petitioner is not confined to the former proceedings only, but may, by further proceedings, show himself entitled to relief. This however is not a very material inquiry at present, as the parties have consented to the admission of the testimony exhibited in the first suit, and a commission has issued in this case.

1810.

Prutzman
vs
Pitesell

If upon this testimony the chancellor was satisfied that the contract of *Henry Pitesell*, the father, with his daughter *Elizabeth*, was sufficiently established to entitle her to a decree for a specific performance, it would be unnecessary to go into the inquiry as to the error of the decree against the petitioner, in order to determine whether such decree ought to have been directed. But his view of the result of the testimony being different, the inquiry, however unpleasant, must be made. Though it may be remarked, that his predecessor, if the present case had come before him, would have been bound to examine into his decree, and to determine accordingly, if any error was found in it, and so also in cases of bills of review.

On the established principles of equity, an infant cannot be bound by the answer of his guardian, if he shows his dissent to it within the proper time, although such answer will be evidence against him, if at such time he neither amends nor makes a new answer, which he may do. *Lord Hardwicke*, in the case of *Bennett vs. Lee*, *(2 Atk. 531,)* remarked, that the infant was justified in saying that his guardian had mistaken his case entirely, and that the court could not refuse his putting in a better answer, and making the best defence he could.

The petition in this case must be considered as tantamount to making a better answer than that of the guardian, and a better defence to the former suit; and if considered in opposition to the bill, without other evidence, will show, that if such had been the answer, the decree would not have been made, and without further evidence cannot be supported. If the petitioner (setting aside the present evidence,) is entitled to relief from the decree having been made on the answer, to which he now dissents, his claim will be strengthened by attending to the manner in which the answer was put in, independent of the interest, alleged to be proved under the commission, which the chancellor is willing to put out of the case, as to the guardian.

The bill filed in October 1796, charges that *Henry Pitesell* expressly, in consideration of the services rendered by *Elizabeth*, his daughter, (and so particularly alleged at the time by him,) and of his natural love and affection for her, and her son, did promise to, and contract with her, to make over and convey in fee simple a parcel of land as therein described, which by the said promise and contract

1810.

Prutzman
vs
Pitesell

was to be conveyed so as to secure a separate estate there-in to her for life, with remainder in fee to her son, and wholly to exclude her husband from any advantage from the same.

If an admission had not been made by the answer, this *parol agreement*, so particular as to the terms of the conveyance, would have required strong proof to support it. But the answer roundly admits the whole—the consideration—the contract—the life estate, and the remainder; and also, that the land was accurately described in the plot exhibited by the complainants. Admitting that the guardian believed the facts to be so, it cannot be thought that he had such a knowledge of them as to make it his duty to admit them, and his answers to the interrogatories in the last commission show that he had not. It appears that this answer was signed for the defendant by a solicitor of this court, and it appears further, that an agreement was signed by him, and by the counsel for the complainants, that the chancellor should decree upon the bill and answer, there being no evidence necessary to be taken; and that a decree should pass for the land as prayed; which agreement and answer by the guardian both went beyond the proposition made by the late chancellor in his remarks of November 1795, which was only for a consent to take depositions before a single magistrate. And it will be found, that the *second* section of the act of 1778, *ch.* 7, which renders the consent of the guardian necessary, extends only to lands chargeable with the payment of money or tobacco, and not to agreements to convey. The chancellor, therefore, takes up this case as if a bill was brought before him by the present defendants for a conveyance, on the proceedings and the evidence now produced, not only without the benefit of the admission in the guardian's answer, but as if the equity of the bill was denied by answer as strongly as it must be inferred to be from the present petition. And if in that view he finds that *Prutzman* would be entitled to relief, it will be proper to dismiss the petition; and if otherwise, to decree according to it. The chancellor is disposed to carry agreements into effect in every case in which it can be done consistent with the established principles of courts of equity, and has doubted the propriety of many cases in which, from too great strictness, the aid of the court has been refused; but the present case is at best

a very doubtful one on the evidence. The expressions of 1810.
*Henry Pitesell* seem to be rather proofs of an intention,
than of an agreement. The particular mode of conveyance
intended or agreed is not shown by the evidence. The
bill states, that the land was to be conveyed so as to se-
cure a separate estate therein to *Elizabeth* for her life,
with remainder in fee to her infant son; and the decree
was for a conveyance to the son in trust, for the sole use
of *Elizabeth* during her life, which, though substantially
the same in effect, shows that the agreement relied on was not
precise in its terms. The part performance of this parol
agreement by giving possession, is not clearly established.
The moving his daughter to the land in question, to reside
on a part of it, and suffering her to receive the rents,
might, from their relationship, have taken place without an
agreement to convey; and the father appears, notwithstand-
ing some of his declarations, to have exercised acts of
ownership on the land, particularly from the evidence on
the last commission; and the improvements relied on are
not of a very valuable kind. And on these grounds the
chancellor is not satisfied that there was such an agree-
ment to convey as would have bound the father in his life-
time. The consideration of the services of *Elizabeth*, if
material as to her, cannot extend to her son. There is
also another circumstance against the right of the present
defendants, under the decree in the former suit. The first
bill(a) stated, that *Henry Pitesell* promised to convey to
*Elizabeth*, a parcel of land, being 100 acres of *The Re-
survey on Smith's Hap*, which 100 acres were to run up to
a road called *Weller's* school road. The second bill stated
the land to have been resurveyed, and the part contracted
for to have been, (as in the other bill,) in the tenancy of
*Daniel Fry*, and to be accurately and particularly described
in the courses and plot exhibited. This plot makes the

Prutzman
vs
Pitesell

(a) There had been a bill filed in the name of *Elizabeth Prutz-
man*, against the present petitioner, on the 10th of February 1791,
the proceedings upon which were exhibited in the present case.
The answer of the then guardian of the petitioner did not admit
the contract as stated, and a commission issued, and testimony was
taken. In November 1795, the then chancellor, by his order, con-
sidered that the contract had not been established by the testimony
taken, and proposed that the complainant, with the consent of the
guardian, should take further testimony before a single magistrate,
if she had any, &c. But that if nothing further was done, the bill
should be dismissed at the next term. Nothing further appears to
have been done.

contents 166 acres, and it does not appear from what *data* the courses were run, or when or by what authority it was made, or wherefore the number of acres should have been more than 100 as at first claimed, and as proved to be the quantity intended, by the bulk of the testimony, and particularly by that of *Thomas Petty*, who says that *Henry Pitesell* intended the 100 acres to run up the branch to *John Weller's* school road, and he allowed that it would contain 100 acres, and if to said road did not contain 100 acres, then it should go over the road so as to include that number. The exhibit No. 1, could not be considered as evidence, except by the admission in the answer, which has already been remarked, and it is plain from the evidence of *Kuhn*, under the last commission, that he had no actual knowledge of the correctness of this survey. The opinion of the late chancellor upon the effect of the evidence, was given to the counsel in writing; and it may have been owing to that circumstance that they did not procure the testimony of the same, or other witnesses, and also to the opinion taken up and expressed in the submission, that no evidence was necessary. No reasons were assigned in the decree, and it may be presumed that this submission, and the agreement, formed the reasons; but as to the evidence, the reasons are expressed, and should have their due weight in deciding on the same evidence, or on evidence rather lessened than increased by the last commission, and it appears to be just to put the parties in their former situation. From these concurring objections to the decree, sufficient, as the chancellor conceives, to show cause why the said conveyance ought not to have been ordered or directed, the present petitioner is entitled to a decree of this court for a reconveyance of the land so conveyed, and for a full account of the rents and profits thereof. The hardship of the case as to *Elizabeth Prutzman*, or the demerit of the present application, are circumstances which the chancellor cannot suffer to influence his decision against the evidence, and the principles of equity applicable to the case. Such cases have frequently occurred, and the hardship to the persons intended to be benefitted by the ancestor, and the consequent benefit to the heir at law, were the result of the rules of inheritance formerly in force, but now altered by our act of descents. But as to the petitioner, he was entitled to the protec-

tion of the court as an infant, when the decree was passed against him. He was not in a situation to appeal from it, and the present defendants will have it in their power to have the whole proceedings revised by the appellate court. *Decreed*, that *Henry Prutzman*, by a good deed, to be acknowledged and recorded agreeably to law, shall give, &c. unto the petitioner, *Henry Pitesell*, and his heirs, all that parcel of land in *Frederick* county, part of *Paraphrase* and *The Resurvey on John's Delight*, containing 166 acres, together with, &c. which was on the 29th day of March 1797, conveyed by *Henry Kuhn*, as guardian and in behalf of *Henry Pitesell*, to the said *Henry Prutzman*, in trust, as by reference to the same will appear, &c. *Decreed* also, that *John Prutzman*, and *Elizabeth* his wife, shall by a good deed, &c. give, &c. unto the petitioner, *Henry Pitesell*, and his heirs, all their interest and right in the said land. *Decreed* also, that the defendants account with the petitioner for the rents and profits of the land, &c.

From this decree the defendants appealed to this court.

*Shaaff*, for the Appellants, contended, 1. That the decree referred to cannot be set aside by a bill, unless that bill suggests fraud, and that fraud be proved; and 2. That in this case there was no fraud. On the *first point*, he cited the acts of *Nov.* 1773, ch. 7, & 1795, ch. 88. *Mosely*, 306. 1 *Harr. Ch. Pr.* 251. *Fountain vs. Caine & Jeffs*, 1 *P. Wms.* 504; and *Napier vs. Effingham*, 2 *P. Wms.* 401.

*Ridgely*, for the Appellee.

DECREE AFFIRMED.

---

## ORME vs. LODGE.

ERROR to *Montgomery* County Court. An action of slander was brought by the plaintiff in error, to which the defendant in error put in the plea of justification short, under an agreement that it should be considered as if a good and valid plea of justification had been put in at length in a formal and legal manner, and so plead as the law required a legal justification in such a case to be pleaded, and the issue regularly joined thereon. At the trial, the court having refused to direct the jury on the plaintiff's

—*Held*, that the plea was not sufficiently pleaded, and upon that ground, reversed the judgment

*[margin note:]* 1810.
Orme
vs
Lodge

*[margin note:]* JUNE.

*[margin note:]* In an action of slander for words spoken, the plea of justification was put in short, with an agreement of the counsel that it should be considered as if a good and valid plea of justification had been put in at length in a formal and legal manner. The court of appeals, on the record coming before them by a writ of error sued out by the plaintiff